KELLY M. KLAUS (SBN 161091)
kelly.klaus@mto.com
SHANNON AMINIRAD (SBN 324780)
shannon.aminirad@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077

JORDAN D. SEGALL (SBN 281102)
jordan.segall@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff
Columbia Pictures Industries, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GEORGE GALLO, SWEET REVENGE PRODUCTIONS, INC., and ROBERT "BOB" ISRAEL, <br><br> Defendants. | Case No. 2:23-cv-5010 <br><br> **COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT** |

COMPLAINT

Plaintiff Columbia Pictures Industries, Inc. ("Columbia Pictures"), through its undersigned counsel, brings this Complaint against Defendants George Gallo ("Gallo"), Sweet Revenge Productions, Inc. ("Sweet Revenge"), and Robert "Bob" Israel ("Israel") for declaratory relief under 28 U.S.C. § 2201(a) (First and Second Claims for Relief) and breach of contract (Third Claim for Relief). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), and 2201(a). Columbia Pictures alleges, on personal knowledge as to itself and information and belief as to others, as follows:

## INTRODUCTION

1. In 1985, Gallo co-wrote a story called "Bulletproof Hearts" (the "Story"). Gallo co-wrote the Story as a work for hire for Sweet Revenge, which was and remains Gallo's personal loan-out company. Gallo owns and controls Sweet Revenge, and he always has. Later in 1985, in a written, binding contract, Gallo and Sweet Revenge specifically represented and warranted that Gallo "created and/or wrote the Story as an employee-for-hire of" Sweet Revenge, and that the Story "constitute[d] a work-made-for-hire pursuant to the United States Copyright Laws." In the same contract, Gallo agreed that if he or his company breach that contract or any of their specific representations and warranties, then Gallo will be *personally* liable for any damages.

2. It is iron-clad law, plain and simple, that works for hire are not subject to termination under Section 203 of the Copyright Act. Columbia Pictures relied on the fact that the Story was a work for hire as it proceeded to develop the Story into the 1995 hit movie *Bad Boys* and the valuable, multi-film franchise that Columbia Pictures continues to expand today.

3. But on June 26, 2020, Gallo nonetheless sent Columbia Pictures a Copyright Termination Notice, claiming for the first time that the Story was not a work for hire, and as a result of that new and unsupported assertion, as of June 27,

2022, Columbia Pictures supposedly has lost its U.S rights to make new derivative works of the Story.

4.     Simply put, Gallo's Termination Notice is false, unlawful, and utterly ineffective.  Columbia Pictures' rights in the Story may not be terminated.  Gallo has never had any personal copyright interest in the Story, and he never will.  What he does have is a contractual obligation to Columbia Pictures to the extent that his baseless Termination Notice and/or any other false representations that he has made will cause Columbia Pictures damage.  Gallo cannot have it both ways:  he cannot make representations to induce the purchase of the Story and then avoid the consequences of later claiming the representations were false.

5.     Columbia Pictures therefore seeks redress to stop Gallo's transparent attempt to claim rights that he simply doesn't have.

## JURISDICTION AND VENUE

6.     There are actual and justiciable controversies between the parties regarding whether notices of termination served by Gallo and Israel are valid under the Copyright Act and, even if they are, whether Gallo and Israel may interfere with Columbia Pictures' U.S. rights to exploit the Story's copyrightable elements in new works.  This Court has original subject matter jurisdiction over Columbia Pictures' claims for declaratory relief pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

7.     The Court has supplemental jurisdiction over Columbia Pictures' claim for breach of contract against Gallo and Sweet Revenge pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b)(1) and (2) because all Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## THE PARTIES

9. Plaintiff Columbia Pictures Industries, Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Culver City, California.

10. Defendant George Gallo is an individual residing in Sherman Oaks, California.

11. Defendant Sweet Revenge Productions, Inc. is a corporation registered under California law, with its principal place of business in Beverly Hills, California.

12. Defendant Robert "Bob" Israel is an individual residing in Los Angeles, California.

## GENERAL ALLEGATIONS

**A.  Sweet Revenge's And Israel's Assignment Of The Copyright To The Story**

13. Gallo and Israel claim that the Story was written in or about the summer of 1985. *See* Notices of Termination, attached as Exhibits B and C, at 2 ¶ 2 of each Notice.

14. Later that year, in a Memorandum of Agreement dated as of September 24, 1985 (the "Agreement"), attached as Exhibit A, at 8 ¶ H.1, Sweet Revenge and Israel sold the Story to Columbia Pictures' predecessor-in-interest, Paramount Pictures Corporation ("Paramount Pictures").

15. In the Agreement, Sweet Revenge and Israel "irrevocably assign[ed] to [Paramount Pictures] in perpetuity, throughout the universe, for use in any and all media, all right, title and interest in and to the Story and any materials relating thereto (e.g., notes, outlines and characterizations)[.]" Ex. A at 7–8.

16. Sweet Revenge and Israel, as "sole owners of the copyright and all rights under copyright in and to the Story," made multiple express representations

-3-
COMPLAINT

and warranties about themselves, the Story's authorship, and the way they structured their business, including:

      (a) Sweet Revenge represented and warranted that Gallo "created and/or wrote the Story as an employee-for-hire of [Sweet Revenge]" and that the Story "constitute[d] a work-made-for-hire pursuant to the United States Copyright Laws."

      (b) Sweet Revenge represented and warranted that it and Israel "own[ed] all right, title and interest of every kind and nature in and to the Story;"

      (c) Sweet Revenge and Israel represented and warranted "that the Story [was] wholly original" and that it "ha[d] not been copied in whole or in part from any other work," *id.* at 8.

17. Gallo and his company, Sweet Revenge, knew and understood how they structured their affairs, including whether Gallo created the Story as Sweet Revenge's employee. Gallo and Sweet Revenge were obligated to state if any of the representations and warranties were inaccurate. Gallo and Sweet Revenge signed the Agreement in which they made the representations and warranties.

18. Israel also signed the Agreement and thereby represented that he expressly "accepted and agreed" with Paragraph H of the Agreement. Paragraph H contains both the irrevocable assignment of rights to the Story and the representations and warranties that Gallo's contribution to the Story was a work made for hire. *Id.* at 7, 10.

19. Defendants further acknowledged and agreed that the counter-party to the Agreement would be "acting in material reliance upon all of the [Agreement's] representations, warranties, covenants and assignment in entering into [the Agreement] and otherwise proceeding with the development, production and distribution of the Picture." *Id.* at 9. Gallo and Sweet Revenge were represented by counsel, who was in a position to advise his clients that they could face significant

negative consequences for making false representations, including breach of contract claims against Gallo personally.

20. At all times material to this dispute, Sweet Revenge has been Gallo's "loan-out" company. In the entertainment industry, many creative professionals (including writers, actors, directors, and others) contract with studios or production companies through their loan-out companies. The use of a loan-out company provides the creative professional with a variety of significant advantages, including substantial tax benefits and limitations on personal liability.

21. Gallo formed Sweet Revenge well before the Story was authored and Defendants executed the Agreement. Sweet Revenge's Articles of Incorporation were filed with the California Secretary of State's Office on May 14, 1984—a full 16 months before Sweet Revenge and Gallo made their representations and warranties that the Story was written as a work made for hire, and more than a year before Defendants claim the Story was written. Since at least May 14, 1984, if not earlier, and continuing for decades through to the present, Gallo has conducted his business dealings with motion picture companies as an employee of Sweet Revenge.

22. Gallo and Sweet Revenge had the power and authority to make the representations and warranties they did, and they made those representations and warranties because they were true and correct.

23. Gallo signed the Agreement on behalf of Sweet Revenge as its President. *Id.* at 10.

```
ACCEPTED AND AGREED TO:

SWEET REVENGE PRODUCTIONS, INC.,
a California corporation


By  George Gallo
   Its  PRESIDENT
```

24. Gallo did more than simply sign the Agreement on behalf of Sweet Revenge. Gallo also executed an addendum to the Agreement in his personal capacity. Gallo thereby:

    (a) affirmed that he had "read and [was] familiar with" the Agreement, *id*. at 11;

    (b) "represent[ed] and warrant[ed]" that Sweet Revenge was "authorized . . . to grant all rights, and make all representations and warranties as hereinabove set forth," *id*.;

    (c) agreed "to be bound by the terms and conditions of the foregoing Agreement insofar as it refer[red] to" Gallo, *id*.;

    (d) agreed that "[i]n the event of a breach, or threatened breach, of the Agreement," the counter-party would "be entitled to seek legal and equitable relief by way of injunction or otherwise against [Gallo] personally without the necessity of first resorting to or exhausting any rights or remedies which it may have against any other party," *id*.; and

    (e) acknowledged that "the foregoing representations, warranties and agreements" were "made by" him "as a material inducement" for the counter-party's execution of the Agreement, and that the counter-party would be relying on those representations and warranties. *Id*.

**B.  Columbia Pictures Obtains The Copyright To The Story**

25. On or about August 12, 1992, Paramount Pictures entered into a written agreement transferring its rights under the Agreement, including its rights in and to the Story, to Hollywood Pictures Company.

26. On or about May 11, 1994, Hollywood Pictures Company entered into a written agreement transferring its rights under the Agreement, including its rights in and to the Story, to Columbia Pictures.

27. Columbia Pictures is the successor to all of Paramount Pictures' rights under the Agreement, including without limitation the copyright to the Story.

### C. Columbia Pictures Develops The *Bad Boys* Motion Picture Franchise

28. In 1995, Columbia Pictures produced and released *Bad Boys*, the first motion picture in a successful franchise of American buddy cop movies and television shows. The comedic, action-packed film was a major critical and commercial success.

29. Columbia Pictures later produced and released two sequel motion pictures, *Bad Boys II* (2003) and *Bad Boys for Life* (2020). A television spin-off, called *L.A.'s Finest*, aired from 2019 to 2020.

30. Columbia Pictures has made significant investments in the *Bad Boys* franchise.

### D. Gallo and Israel Serve Columbia Pictures With Invalid And Ineffective Notices of Termination

31. On or about January 17, 2020, *The Hollywood Reporter* reported that a fourth installment of the *Bad Boys* franchise was under development.[1]

32. On or about June 26, 2020, Gallo and Israel filed in the Copyright Office and served Columbia Pictures with two "Notices of Termination." The first Notice, served on behalf of Gallo and Israel, purported to terminate, effective June 27, 2022, the Agreement's assignment of the copyright to the Story (the "Gallo-Israel Notice," attached as Exhibit B). The second Notice, served on behalf of Gallo, purported to terminate, effective June 27, 2022, a "September 23, 1985 grant by George Gallo of his rights under copyright in the [Story] to Sweet Revenge" (the "Gallo Notice," attached as Exhibit C, at 2 ¶ 3). (The Gallo-Israel Notice and the Gallo Notice are referred to jointly as the "Notices.")

---

[1] *See* Borys Kit, *'Bad Boys 4' in the Works*, The Hollywood Reporter (Jan. 17, 2020), https://www.hollywoodreporter.com/movies/movie-news/bad-boys-4-works-1269915/.

33. The Copyright Act gives certain authors the right to terminate "the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author[s] on or after January 1, 1978." 17 U.S.C. § 203(a). But without exception, a work made for hire is *never* subject to termination. *Id.* There can be no dispute that Sweet Revenge, as the author of the Story under the work-made-for-hire doctrine, has no termination right. *Id.*

34. The Gallo Notice and the Gallo-Israel Notice are invalid and do not affect Columbia Pictures' exclusive ownership of the copyright to the Story.

**The Gallo Notice**

35. The Gallo Notice purports to terminate, effective June 27, 2022, "the grant of the transfer of rights under the copyright in and to and to the original story entitled 'Bulletproof Hearts,' from which the 1995 motion picture 'Bad Boys' was derived." Ex. C at 1–2 ¶ 4.

36. The Gallo Notice states that it applies to a "September 23, 1985 grant by George Gallo of his rights under copyright in the Work to Sweet Revenge Productions, Inc." *Id.* at 2 ¶ 3. The Agreement neither refers to nor suggests there was any such grant of rights to the Story from Gallo to Sweet Revenge on September 23, 1985 or at any other time. On the contrary, Gallo and Sweet Revenge expressly represented in the Agreement that Gallo's contributions to the Story were done as a work made for hire as Sweet Revenge's employee.

37. On or about May 20, 2021, Columbia Pictures served upon Gallo's counsel and filed in the Copyright Office a Counter-Statement to the Gallo Notice (attached as Exhibit D).

38. Columbia Pictures' Counter-Statement explained that, among other deficiencies, the Gallo Notice was invalid because, contrary to that Notice's assumption that Gallo was an author of the Story, Gallo and Sweet Revenge represented in the Agreement that Gallo's contributions to the Story were provided as a work made for hire under the Copyright Act, Ex. A at 8, and thus the copyright

in those contributions was not subject to termination under the Copyright Act. Ex. D at 1.

**The Gallo-Israel Notice**

39. The Gallo-Israel Notice purports to terminate, effective June 27, 2022, "the grant of the transfer of rights under the copyright in and to [Gallo's and Israel's] original story entitled 'Bulletproof Hearts,' from which the 1995 motion picture 'Bad Boys' was derived." Ex. B at 1.

40. The Gallo Notice states that it "applies to the grant of all rights under copyright in the [Story] in the [A]greement." *Id*. at 2 ¶ 3.

41. On or about May 20, 2021, Columbia Pictures served upon Gallo's and Israel's counsel and filed in the Copyright Office a Counter-Statement to the Gallo-Israel Notice (attached as Exhibit E).

42. In its Counter-Statement, Columbia Pictures explained that, among other deficiencies, the Gallo-Israel Notice was invalid because the termination of a joint grant by two or more authors of a work may only be effected by a majority of the authors who executed the grant. 17 U.S.C. § 203(a)(1). In this case, one of the two joint authors who executed the grant, Sweet Revenge, could not effect a termination because it authored the Story as a work made for hire, and the termination right does not apply to works made for hire. *Id*. § 203(a). A majority of the authors who executed the grant therefore could not and did not terminate it. Ex. E at 1–2.

43. The Gallo-Israel Notice represents that Gallo, not Sweet Revenge, was an author of the Story. The Gallo-Israel Notice thus contradicts Sweet Revenge's and Gallo's representations and warranties in the Agreement that Gallo wrote the Story as Sweet Revenge's employee-for-hire and that his contributions were provided as a work made for hire. Ex. A at 8.

### E. Columbia Pictures Asks Defendants For Information Relevant To The Attempted Termination—And Defendants For Years Ignore Columbia Pictures' Requests

44. In the Notice served solely for himself, Gallo for the first time ever asserted to Columbia Pictures that on September 23, 1985—just one day before he and Sweet Revenge made the Agreement—Gallo had assigned his purportedly personal rights in the Story to Sweet Revenge. Ex. C at 2 ¶ 3. That assertion was expressly inconsistent with Gallo's and Sweet Revenge's representations in the Agreement. In the September 24, 1985 Agreement, Gallo and Sweet Revenge made specific, binding representations that Gallo made his contributions to the Story as a work made for hire as Sweet Revenge's employee. Gallo and Sweet Revenge thereby represented and warranted that Gallo did not have and never had any personal rights in the Story to assign to anyone.

45. Gallo and Sweet Revenge were duty bound to disclose the flat-out inconsistency between their representations in the September 24, 1985 Agreement and any claim that Gallo had attempted to assign a copyright to the Story to Sweet Revenge.

46. Given the stark inconsistency between Gallo's assertion in his Notice and his representations in the Agreement, Columbia Pictures, on October 2, 2020, asked Gallo's counsel to produce a copy of the purported September 23, 1985 assignment. Gallo's counsel ignored the request. Columbia Pictures repeated its request on October 23 and November 11, 2020. Gallo's counsel ignored those requests, too. Nor did Gallo's counsel respond to Columbia Pictures' Counter-Statement, served May 21, 2021, which stated that Columbia Pictures had not received a response to its requests for a copy of the purported assignment.

47. On December 1, 2022, more than two years after Columbia Pictures first requested a copy of the claimed assignment, Gallo's counsel produced a document purporting to be a September 23, 1985 assignment from Gallo to Sweet

1 Revenge. That document makes no difference to the rights to the Story that Columbia Pictures acquired. As Gallo and Sweet Revenge represented in the September 24, 1985 Agreement, Gallo never had any rights in the Story that he could grant to Sweet Revenge or anyone else because it expressly was a work for hire.

48. Gallo's counsel also ignored other of Columbia Pictures' requests for information. Columbia Pictures has repeatedly asked Gallo's counsel for a copy of the Story, which Sweet Revenge and Israel had sold to Paramount Pictures. Columbia Pictures acquired the project developed from the Story (as well as the rights to the Story) almost nine years after the Agreement.

49. A copyright termination, where effective, does not apply to the utilization of derivative works "prepared under [the] authority of the [original] grant" and in accordance with the terms of that grant; a grantee only needs authorization to prepare "other derivative works based upon the copyrighted work covered by the terminated grant." 17 U.S.C. § 203(b)(1).

50. Thus, even if Gallo's and Israel's Notices were effective (which they are not), the Notices would only affect Columbia Pictures' U.S. rights to utilize copyrightable elements from the Story, not original and independently copyrightable elements that Columbia Pictures itself owns through the creation of the works in the *Bad Boys* franchise.

51. The Story likely bears little resemblance to the *Bad Boys* franchise. The original script underwent numerous rewrites, by multiple screenwriters, across different studios and many years.[2] Many scenes were also improvised. Gallo's counsel's refusal to provide a copy of the Story despite Columbia Pictures' repeated

---

[2] *See* Jane Galbraith, *Movies: Off-Centerpiece*, L.A. Times (Jan. 24, 1993), https://www.latimes.com/archives/la-xpm-1993-01-24-ca-2302-story.html (describing early efforts to rewrite the script before Columbia Pictures acquired rights).

requests further suggests that the Story bears little resemblance to the films released as part of *Bad Boys* franchise.

52. To this day, Gallo's counsel has not responded to Columbia Pictures' requests for a copy of the Story.

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Declaratory Relief Under 28 U.S.C. § 2201(a) as to Validity of Notices

### (against Gallo and Israel)

53. Columbia Pictures incorporates by reference each and every averment contained in Paragraphs 1 to 52 inclusive.

54. Gallo and Israel served Notices of Termination, dated June 26, 2020, purporting to terminate Columbia Pictures' rights to the Story under 17 U.S.C. § 203, effective June 27, 2022.

55. As Gallo and Sweet Revenge expressly represented and warranted in the Agreement, Gallo provided his contributions to the Story as a work made for hire as Sweet Revenge's employee.

56. The time has long since passed for Gallo to claim that he, and not Sweet Revenge, was the Story's author under the Copyright Act. If Gallo wanted to contest the fact of Sweet Revenge's authorship, Gallo had to file a claim seeking a declaration of ownership by not later than three years from the date he was presented with, reviewed, and executed the Agreement, in which both he and Sweet Revenge represented and warranted that Sweet Revenge was the author of the Story as a work made for hire under the Copyright Act. 17 U.S.C. § 507(b). Gallo has never brought any such claim. Even if the statute of limitations did not bar Gallo's attempt to claim authorship of the Story, Defendants' representations and warranties that Sweet Revenge, and not Gallo, was the Story's author were true. This is demonstrated by, among other things, the fact that Gallo has conducted his business dealings with motion picture companies as Sweet Revenge's employee, from well

before the Story was written and the Agreement executed all the way through to the present day.

57. Sweet Revenge and Israel are joint authors of the Story.

58. Through the Agreement, Sweet Revenge and Israel granted all right, title, and interest in and to the Story to Paramount Pictures. Columbia Pictures is the successor in interest to all of Paramount Pictures' rights under the Agreement, including without limitation the copyright to the Story.

59. Gallo cannot terminate any grant of copyright to the Story because he is not an author of the Story legally for copyright purposes.

60. Israel cannot terminate any grant of copyright to the Story because "a majority of the authors who executed" the grant could not and did not effect a termination of it. *Id*. § 203(a)(1).

61. Columbia Pictures has a real and reasonable apprehension of litigation by Gallo and/or Israel that Columbia Pictures' exercise on or after June 27, 2022 of any of the exclusive U.S. rights of copyright in the creation or exploitation of new works in the *Bad Boys* franchise would infringe rights that Gallo and Israel claim to have as the result of serving the Notices.

62. An actual and justiciable controversy exists between Columbia Pictures, on the one hand, and Gallo and Israel, on the other, regarding the validity of the Notices and the respective rights of Columbia Pictures, Gallo, and Israel to the Story.

63. A declaration is necessary and appropriate at this time in light of the purported June 27, 2022 effective termination date and Columbia Pictures' production of a fourth *Bad Boys* motion picture.

64. Columbia Pictures has no adequate remedy at law to any claim by Gallo and/or Israel based on the purported termination of the assignment of the copyright to the Story.

65. Columbia Pictures therefore is entitled to a declaration, pursuant to 28 U.S.C. § 2201(a), that the Notices are invalid under 17 U.S.C. § 203 and do not effect a termination of Columbia Pictures' rights in and to the Story.

## SECOND CLAIM FOR RELIEF

**Declaratory Relief Under 28 U.S.C. § 2201(a) as to Equitable Estoppel Defense**

**(in the alternative to First Claim for Relief)**

**(against Gallo and Israel)**

66. Columbia Pictures incorporates by reference each and every averment contained in paragraphs 1 to 65 inclusive.

67. If the Notices are deemed valid, Gallo and Israel are equitably estopped from attempting to interfere with Columbia Pictures' continued exploitation of U.S. rights to the Story in the *Bad Boys* franchise, including by asserting any claim for copyright infringement based on the Story with respect to any future work in the *Bad Boys* franchise.

68. Gallo and Sweet Revenge represented and warranted in the Agreement that Gallo "wrote the Story as an employee-for-hire of" Sweet Revenge, and that Gallo provided his contributions to the Story as "a work-made-for-hire pursuant to the United States Copyright Laws." Ex. A at 8. Israel accepted and agreed with those representations and warranties and expressly indicated that acceptance when he executed the Agreement. *Id.* at 10.

69. Gallo knew the facts underlying the representations and warranties in the Agreement. Israel had actual or at a minimum constructive knowledge of those facts because he signed the Agreement and thereby accepted and agreed with Gallo's and Sweet Revenge's representations and warranties.

70. Gallo and Israel knew that any counter-party to the Agreement would rely on their representations and warranties. The Agreement expressly stated the counter-party would be "acting in material reliance upon all [of] the [Agreement's] representations, warranties, covenants and assignment in entering into [the

Agreement] and otherwise proceeding with the development, production and distribution of the Picture." *Id.* at 9, 11.

71. Columbia Pictures had no knowledge that the representations and warranties in the Agreement were possibly false when they were made or that Gallo and Israel would later attempt to renounce the warranties and representations and terminate the assignment of copyright.

72. Columbia Pictures has reasonably relied upon, and continues to rely to its detriment upon Gallo's representations and warranties and Israel's acceptance of and agreement to those representations and warranties. Columbia Pictures' reasonable reliance is demonstrated by, among other things, the substantial investments that Columbia Pictures has made in the *Bad Boys* franchise, including by developing a fourth *Bad Boys* motion picture.

73. If the Notices are deemed valid, Columbia Pictures has a real and reasonable apprehension of litigation over a claim Gallo and/or Israel that Columbia Pictures' exercise on or after June 27, 2022 of any of the exclusive U.S. rights in the creation or exploitation of new works in the *Bad Boys* franchise would infringe Gallo's and/or Israel's rights.

74. An actual and justiciable controversy exists between Columbia Pictures, on the one hand, and Gallo and Israel, on the other, regarding whether Gallo and Israel are equitably estopped from attempting to interfere with Columbia Pictures' continued exploitation of the *Bad Boys* franchise, including by asserting any claim for copyright infringement based on the Story with respect to any future work in the *Bad Boys* franchise.

75. A declaration is necessary and appropriate at this time in light of the purported June 27, 2022 effective termination date and Columbia Pictures' development of a fourth *Bad Boys* motion picture.

76. Columbia Pictures has no adequate remedy at law to any claim by Gallo and/or Israel based on the purported termination of the assignment of the copyright to the Story.

77. If the Notices are deemed valid, then Columbia Pictures is entitled to a declaration, pursuant to 28 U.S.C. § 2201(a), that Gallo and Israel are estopped from taking any action, including without limitation asserting a claim for copyright infringement, that could interfere with Columbia Pictures' exploitation of copyrightable elements from the Story in any post-termination works.

## THIRD CLAIM FOR RELIEF

### Breach of Contract

**(in the alternative to First Claim for Relief)**

**(against Gallo and Sweet Revenge)**

78. Columbia Pictures incorporates by reference each and every averment contained in paragraphs 1 to 77 inclusive.

79. On or about September 24, 1985, Sweet Revenge and Israel entered into the Agreement with Paramount Pictures.

80. Columbia Pictures is the successor to and owner of all of Paramount Pictures' rights under the Agreement, including without limitation all right, title, and interest in and to the Story.

81. Columbia Pictures and its predecessors have at all times performed the terms of the Agreement in the manner specified therein.

82. Gallo executed the Agreement as Sweet Revenge's President and also executed an addendum to the Agreement in which he "represent[ed] and warrant[ed]" that Sweet Revenge was "authorized . . . to grant all rights, and make all representations and warranties as hereinabove set forth." Gallo also agreed "to be bound by" the Agreement's terms and conditions insofar as any of them referred to Gallo, and to be subject to legal and equitable relief "[i]n the event of a breach, or threatened breach, of the Agreement." Ex. A at 11.

83. In the Agreement, Gallo and Sweet Revenge represented and warranted that Gallo "wrote the Story as an employee-for-hire of" Sweet Revenge, and that Gallo provided his contributions to the Story as "a work-made-for-hire pursuant to the United States Copyright Laws." *Id*. at 8.

84. If the representations and warranties in the Agreement were not true and accurate, then Sweet Revenge and Gallo, its President, had the responsibility to correct them before signing the Agreement.

85. If the Notices are deemed effective, then Gallo and Sweet Revenge necessarily will have breached their representations and warranties in the Agreement.

86. If the Notices are deemed effective, then Gallo's and Sweet Revenge's breach will have caused, and will continue to cause, damages to Columbia Pictures, including without limitation damages from Columbia Pictures' investments in the *Bad Boys* franchise in reliance on the representations and warranties in the Agreement and the loss of substantial revenue that would result from the impairment of Columbia Pictures' rights regarding any post-termination works in the *Bad Boys* franchise.

**PRAYER FOR RELIEF**

WHEREFORE, Columbia Pictures prays for judgment against Defendants and the following relief:

(1) On Columbia Pictures' First Claim for Relief, for declaratory relief as to the validity of notices:

(a) For a declaration that the Notices are invalid and do not effect a termination of any of Columbia Pictures' rights in and to the Story.

(b) For preliminary and permanent injunctive relief barring Gallo and Israel from taking any action to interfere with Columbia Pictures' exercise of any of the exclusive rights of copyright to the Story.

(c) For Columbia Pictures' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. § 505.

(2) In the alternative to the First Claim for Relief, on Columbia Pictures' Second Claim for Relief, for declaratory relief as to its equitable estoppel defense:

    (a) For a declaration that Gallo and Israel are estopped from taking any action, including without limitation asserting a claim for copyright infringement, that could interfere with Columbia Pictures' exploitation of copyrightable elements from the Story in any post-termination works.

    (b) For preliminary and permanent injunctive relief barring Gallo and Israel from taking any action to interfere with Columbia Pictures' exercise of any of the exclusive rights of copyright to the Story.

    (c) For Columbia Pictures' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. § 505.

(3) In the alternative to the First Claim for Relief, on Columbia Pictures' Third Claim for Relief, for breach of contract:

    (a) For compensatory damages from Gallo and Sweet Revenge, subject to proof, and for prejudgment interest according to law.

    (b) For Columbia Pictures' attorneys' fees and full costs incurred in this action.

(4) On all Claims for Relief: For all further and additional relief, in law or equity, deemed just and proper.

DATED: June 23, 2023        MUNGER, TOLLES & OLSON LLP

By:    */s/ Kelly M. Klaus*
      KELLY M. KLAUS
      Attorneys for Plaintiff
      Columbia Pictures Industries, Inc.