# EXHIBIT A

DATE: As of September 24, 1985

SUBJECT: "BULLETPROOF HEARTS"
GEORGE GALLO (WRITER)

## MEMORANDUM OF AGREEMENT

The following are the terms of agreement between Paramount Pictures Corporation ("PPC") and Sweet Revenge Productions, Inc., a California corporation, Federal I.D. #95-3933514 ("Lender") for the writing services of George Gallo ("Writer") in connection with the proposed feature-length theatrical motion picture project (the "Picture") tentatively entitled "BULLETPROOF HEARTS". The work to be done by Writer hereunder is based upon an original story (the "Story") by Writer and Bob Israel ("Israel").

A. **SERVICES AND COMPENSATION:**

1. Lender shall furnish the services of Writer who shall be engaged by PPC to write an original first draft screenplay (the "First Draft") based on the Story for $75,000 (less sums payable to Israel as provided below), which sum shall accrue and be payable as follows:

    (a) $37,500 (less the sum of $3,750 payable to Israel pursuant to Paragraph H below) on the latter of signature of this Memorandum of Agreement and a Certificate of Authorship or on commencement of writing services (which payment shall also be inclusive of the full consideration for the assignment by Lender to PPC of Lender's interest in the Story, the sufficiency of which consideration Lender hereby acknowledges); and

    (b) $37,500 (less the sum of $3,750 payable to Israel pursuant to Paragraph H. below) on delivery to PPC of the completed First Draft ;

2. PPC shall have an exclusive option to engage Writer to write a set of revisions (the "Set"), exercisable within four weeks following delivery of the First Draft. If PPC elects to proceed with Writer's services, Lender shall be entitled to $30,000 (less sums payable to Israel as provided below), which sum shall accrue and be payable as follows:

[handwritten: 67,500]
[handwritten: 21K]

8500478/7369E Rev. 11/05/85        -1-
George Gallo
BULLETPROOF HEARTS

    (a)    $15,000 (less the sum of $3,000 payable to Israel pursuant to Paragraph H. below) on start of the Set; and

    (b)    $15,000 (less the sum of $3,000 payable to Israel pursuant to Paragraph H. below) on delivery to PPC of the completed Set.

3.    PPC shall have an exclusive option to engage Writer to write a complete polish (the "Polish"), exercisable within four weeks following delivery of the Set. If PPC elects to proceed with Writer's services, Lender shall be entitled to $15,000 (less sums payable to Israel as provided below), which sum shall accrue and be payable as follows:

    (a)    $7,500 (less the sum of $1,500 payable to Israel pursuant to Paragraph H. below) on start of the Polish; and

    (b)    $7,500 (less the sum of $1,500 payable to Israel pursuant to Paragraph H. below) on delivery to PPC of the completed Polish.

4.    If the Picture is made and Writer receives screenplay credit, Lender shall be entitled to receive:

    (a)    A bonus:

        (i)    If Writer receives sole screenplay credit (or shares such credit with Israel only), $250,000 less the aggregate of all sums paid pursuant to subparagraphs A.1. through A.3. above and less the sums paid or payable to Israel pursuant to Paragraph H. below; OR

        (ii)    If Writer receives shared screenplay credit (with a writer other than Israel), $65,000 (less the sum of $25,000 payable to Israel pursuant to Paragraph H. below).

Said bonus shall be payable upon final WGA credit determination; provided, however, that if no other writer has been engaged prior to start of principal photography, PPC shall pay Lender (on start of principal photography) the bonus set forth above for shared screenplay credit i.e., the sum of $65,000 (less sums payable to Israel pursuant to Paragraph H. below), with the balance (if any) payable on final WGA credit determination. Lender shall not be

entitled to any bonus payment if Writer does not receive any screenplay credit.

(b) Contingent Compensation:

(i) If Writer receives sole screenplay credit (or shares credit with Israel only), a sum equal to 5% of 100% of the net profits, if any, of the Picture; OR

(ii) If Writer receives shared screenplay credit (with a writer other than Israel), a sum equal to 2 1/2% of 100% of the net profits, if any, of the Picture.

Lender shall not be entitled to any sums measured by the net profits of the Picture if Writer does not receive any screenplay credit. "Net profits" shall be defined, computed, accounted for and paid in accordance with PPC's Exhibit "NP" net profits definition (including, without limitation, its 15% overhead charge on negative cost), subject only to such changes therein as may be mutually agreed upon in writing after good-faith negotiations.

(c) If Writer receives sole screenplay credit (or shares such credit with Israel only), Lender shall be entitled to receive a deferment in the sum of $25,000, which sum shall accrue and be payable, if ever, out of the first net profits, if any, of the Picture, pro rata with all other similar deferments.

B. DELIVERY SCHEDULE:

1. First Draft Screenplay:

| | |
|---|---|
| Start of Services: | As designated by PPC, but no sooner than the latter of satisfaction of Condition Precedent, if any, signature of this Agreement and a Certificate of Authorship. |
| Writing Period: | 12 weeks |
| Reading Period: | 4 weeks |

2. First Set of Revisions:

| | |
|---|---|
| Writing Period: | 6 weeks |

8500478/7369E Rev. 11/05/85     -3-
George Gallo
BULLETPROOF HEARTS

        Reading Period:        4 weeks

5.    **Complete Polish:**

        Writing Period:        3 weeks

To the extent that PPC exercises its option under Subparagraph A.2 above, PPC shall have the right to postpone Writer's services on the Set (subject to Writer's professional availability) to any time up to start of principal photography. If PPC exercises its option under Subparagraph A.3. above, PPC shall have the right to postpone Writer's services on the Polish up to completion of principal photography, subject to Writer's professional availability.

If PPC postpones any services in accordance with the foregoing, the applicable payments specified above for such postponed services shall be made as if such services were timely ordered and the applicable literary material timely delivered.

During all writing periods, Writer's services shall be exclusive to PPC; during all reading periods, Writer's services may be non-exclusive but shall be on a first-priority basis. Time is of the essence with respect to the aforesaid writing/delivery periods.

C.    **CREDIT:** Per WGA Agreement.

D.    **NOVELIZATION:** If Writer shall qualify for sole separated rights pursuant to the WGA Basic Agreement (or shares such rights with Israel only), and is the "negotiating writer" pursuant to the provisions of the WGA Agreement, novelization rights shall be in accordance with the WGA provisions, modified only as follows: If Writer elects to write and negotiate for a novelization and concludes a publishing agreement, all in accordance with the WGA Basic Agreement, then for use of its artwork, PPC shall receive 25% of all income payable to Writer for licensing both the novelization rights and artwork including title and PPC approved stills. Writer shall provide in the publishing agreement that:

    1.    Writer shall use Writer's best efforts to cause publication of the novelization to be tied in with the release of the Picture;

    2.    The publisher will pay PPC's share of royalty and advance directly to PPC;

    3.    PPC will have independent and separate audit rights;

    4.    PPC shall have approval over the use of any artwork; and

    5.    The copyright shall be in PPC's name.

Any such novelization shall substantially conform to the final screenplay for the Picture. If PPC desires a novelization and Writer elects not to write same, PPC will, nevertheless, cause the designated publisher to pay Writer 40% of all income payable to PPC for softcover novelization rights and artwork. If monies are paid to Writer hereunder by the publisher or PPC then no publication monies derived by PPC shall be included in the gross receipts of the Picture for purposes of computing any deferred or contingent compensation which may be due or payable to Writer pursuant to this Agreement. If the monies paid to Writer are greater than an amount equal to the minimum compensation to which Writer is entitled under the WGA Basic Agreement, it is understood that same are inclusive of such minimum amount.

E.    <u>TRANSPORTATION AND EXPENSES</u>: If Writer is required by PPC to travel more than fifty (50) miles away from Writer's permanent residence, which is Los Angeles, California, Writer will receive a non-accountable allowance, in lieu of all living and incidental expenses, of $1,500 per week in major metropolitan cities, such as New York and London; $1,250 per week in other metropolitan cities and $1,000. per week elsewhere (the foregoing pro-rated at 1/7th thereof per day), plus one first-class round-trip transportation, if available and if used for this purpose. PPC shall not be responsible for any other expenses or perquisites of Writer. PPC shall give good faith consideration to increasing the applicable allowance if at the time Writer is at such location Writer demonstrates that such allowance is insufficient to meet Writer's reasonable expenses. However, in the event of any conflict, PPC's decision should prevail.

F.    <u>SEQUEL, REMAKE, TV SERIES, MINI-SERIES, MOW:</u> If Writer is entitled to sole separation of rights (or shares such rights with Israel only) pursuant to the WGA Basic Agreement (and if Writer is not engaged to write for the applicable production described below), then Lender shall be entitled to the payments set forth below (reducible to the extent, if any, that Israel is entitled to receive payments pursuant to the provisions of the WGA Basic Agreement). The payments hereunder shall be deemed in lieu of and credited against any minimum compensation to which Lender or Writer may be entitled under the WGA Agreement.

    1.    <u>Theatrical Sequel:</u> As cash compensation (payable on commencement of principal photography) one-half of the

8500478/7369E Rev. 11/05/85    -5-
George Gallo
BULLETPROOF HEARTS

aggregate of the cash compensation actually paid pursuant to Subparagraphs A.1. through A.4. above plus the sum paid to Israel pursuant to Paragraph H. below; plus, as contingent compensation, a percentage of the net profits (if any) of such sequel, which percentage shall be equal to one-half of the percentage of the net profits which Lender was entitled to receive for the Picture, plus a deferment payable, if ever, out of the first net profits, if any, of such sequel pro rata with all other similar deferments, in an amount equal to one-half of the deferment payable to Lender pursuant to paragraph A.4.(c) above.

2. **Theatrical Remake:** As cash compensation (payable on commencement of principal photography) one-third of the aggregate of the cash compensation actually paid pursuant to Subparagraphs A.1. through A.4. above plus sums paid to Israel pursuant to Paragraph H. below; plus, as contingent compensation, a percentage of the net profits (if any) of such remake, which percentage shall be equal to one-third of the percentage of the net profits which Lender was entitled to receive for the Picture, plus a deferment payable, if ever, out of the first net profits, if any, of such remake, pro rata with all other similar deferments, in an amount equal to one-third of the deferment payable to Lender pursuant to Paragraph A.4.(c) above.

3. **TV Network Series Royalties (on telecast over U.S. network):**

| | |
|---|---|
| 30 minutes or less | $1,500 |
| 31-60 minutes | $1,750 |
| 61 minutes or more | $2,000 |

20% of the applicable series royalty shall be payable for each of the first 5 U.S. network reruns. No further sums shall be payable for any other runs of such episode.

If the TV series is produced for initial airing on Home Box Office, Showtime or Warner-Amex or for syndication or if a primetime U.S. network "generic spin-off" of a series is produced, Lender shall be entitled to 50% of the royalties specified above for the applicable length; and if a prime-time U.S. network "planted spin-off" of a series is produced, 25% of the applicable royalty above for such use.

8500478/7369E Rev. 11/05/85   -6-
George Gallo
BULLETPROOF HEARTS

    4.   <u>MOW (on telecast)</u>: $15,000 for the first two hours; $7,500 for each additional hour thereafter (up to a maximum of $60,000); pro-rated for a partial hour.

    5.   <u>Mini-Series (e.g. - "ROOTS") (on telecast)</u>: $15,000 for first two hours, $7,500 for each additional hour, pro-rated for a partial hour, up to a maximum of $60,000 for the entire mini-series.

    With respect to Subparagraphs 3, 4 and 5 above, if the applicable production is produced pursuant to a network or other exhibitor order, but not telecast, then the applicable royalty shall be paid within 30 days after the end of the applicable broadcast season.

G.   <u>FIRST OPPORTUNITY - THEATRICAL SEQUEL/THEATRICAL REMAKE/TV NETWORK PILOT/MINI-SERIES/MOW</u>: For a period of seven (7) years after the initial release of the Picture, if PPC elects, in its sole discretion, to produce a theatrical sequel, theatrical remake, TV network series pilot, mini-series and/or MOW based upon the Picture, and if Writer receives sole writing credit for the Picture and is then still active as a screenwriter in the motion picture industry to the same extent that Writer is now active, Writer shall have the first opportunity to write (a) such theatrical sequel and/or remake upon the terms to be negotiated in good faith, but in no event less favorable than the terms applicable to Writer's services in connection with the Picture (provided, however, that in the event no agreement is reached, or Writer elects not to write or is unavailable, PPC shall have the right to engage another writer(s) and shall have no further obligation to Writer with respect to such theatrical writing services hereunder); and (b) subject to network approval, such TV Network series pilot, mini-series and/or MOW, upon terms to be negotiated in good faith (provided, however, that in the event no agreement is reached, or Writer elects not to write or is unavailable, PPC shall have the right to engage another writer(s) and shall have no further obligation to Writer with respect to such television services hereunder). Neither party shall be obligated to continue any negotiations hereunder for more than fifteen (15) business days following the commencement thereof.

H.   <u>STORY</u>:

    1.   Lender and Writer (in consideration of the sum payable to Lender pursuant to Paragraph A.1.(a) above) and Israel (by his signature below) hereby irrevocably assign to PPC in perpetuity, throughout the universe, for use in any and all media, all right, title and interest in and to the Story and any materials relating thereto (e.g., notes,

outlines and characterizations) created by them prior to or after the effective date of this Memorandum of Agreement, whether written or otherwise. Lender and Israel, as sole owners of the copyright and all rights under copyright in and to the Story, represent and warrant to, and agree with, PPC that the Story is wholly original with Writer and Israel and has not been copied in whole or in part from any other work (in connection with the foregoing, Lender represents and warrants to PPC that Writer created and/or wrote the Story as an employee-for-hire of Lender, constitutes a work-made-for-hire pursuant to the United States Copyright Laws, and Lender and Israel own all right, title and interest of every kind and nature in and to the Story). Writer and Israel have reduced the Story to writing (or otherwise identify existing written material upon which the Story is based or from which it is derived) and have delivered to PPC such written Story (and other material, if applicable) as expeditiously as possible (PPC hereby acknowledges that the foregoing requirement has been satisfied).

2. As full consideration for the assignment by Israel to PPC, PPC agrees to pay to Israel the following:

    a. As full cash consideration for the assignment by Israel to PPC of all of Israel's rights in and to the Story, the sum of $3,750, which sum shall be paid to Israel concurrently with the sums payable to Lender pursuant to Paragraph 1.(a) above.

    b. As contingent compensation:

        (i) The sum of $3,750 which sum shall accrue and be payable, if ever, concurrently with the sums payable to Lender pursuant to Paragraph A.1.(b) above;

        (ii) The sum of $3,000, which sum shall accrue and be payable, if ever, concurrently with the sums payable to Lender pursuant to Paragraph A.2.(a) above;

        (iii) The sum of $3,000, which sum shall accrue and be payable, if ever, concurrently with the sums payable to Lender pursuant to Paragraph A.2.(b) above;

        (iv) The sum of $1,500, which sum shall accrue and be payable, if ever, concurrently with the sums payable to Lender pursuant to Paragraph A.3.(a) above;

8500478/7369E Rev. 11/05/85    -8-
George Gallo
BULLETPROOF HEARTS

      (v)    The sum of $1,500, which sum shall accrue and be payable, if ever, concurrently with the sums payable to Lender pursuant to Paragraphs A.3.(b) above; and

      (vi)   If Writer receives sole screenplay credit (or shares such credit with Israel only), an amount equal to 30% of the sole credit bonus payable under Paragraph A.4.(a)(i), or if Writer shares such credit (with a writer other than Israel), the sum of $25,000, which applicable sum shall accrue and be payable, if ever, concurrently with any payments to Lender pursuant to Paragraph A.4.(a), above.

   3.    PPC is acting in material reliance upon all the foregoing representations, warranties, covenants and assignment in entering into this Memorandum of Agreement and otherwise proceeding with the development, production and distribution of the Picture.

I.    **REIMBURSEMENT OF FRINGE BENEFITS**: PPC shall reimburse Lender for Lender's payments on account of contributions to WGA Pension and Health Plans with respect to Writer's engagement hereunder as a writer to the extent that Lender is obligated to make any such payments in connection with the services of Writer hereunder, upon Lender's substantiation to PPC that said payments have been paid by it. Such reimbursement shall be made to Lender upon submission of Lender's invoice accompanied by vouchers and other documents (all of the foregoing to PPC's reasonable satisfaction) evidencing the amount of such payments made by Lender. In no event shall the aggregate amount of any reimbursements hereunder exceed the total of all similar payments which PPC would be required to make had PPC employed Writer directly.

J.    **GENERAL**:

   1.    The balance of the terms shall be PPC's Schedule I for the engagement of a Writer, subject only to those changes therein as may be mutually agreed on in writing after good faith negotiation.

   2.    Notices hereunder shall be in writing. Any notices hereunder shall be given by personal delivery or by mailing (in a postpaid, certified or registered wrapper) or telegraphing the same to the appropriate party at the address listed below, and the date of such personal delivery, mailing or telegraphing shall be the date of the

8500478/7369E Rev. 11/05/85     -9-
George Gallo
BULLETPROOF HEARTS

giving of such notice. The names and addresses below concerning notices to all parties hereto shall also be deemed to be the place where accounting statements and payments as may be required under this Agreement shall be sent:

**To PPC:**

5555 Melrose Avenue
Los Angeles, CA 90038
Attn: Legal Department

**With copy to:**

1 Gulf + Western Plaza
New York, New York 10023
Attn: Legal Department

**To Lender, Writer and Israel:**

c/o Creative Artists Agency
1888 Century Park East
Suite 1400
Los Angeles, CA. 90067

Attn: Jonathan Levin, Esq.

**With a courtesy copy to:**

Irwin & Rowan
2029 Century Park East
Suite 1690
Los Angeles CA 90067

Attn: Dan Riviera, Esq.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date first above written.

PARAMOUNT PICTURES CORPORATION

By _/s/ Ralph Kamon_
Its RALPH KAMON
Senior Vice President

ACCEPTED AND AGREED TO:

SWEET REVENGE PRODUCTIONS, INC.,
a California corporation

By _/s/ George Gallo_
Its  PRESIDENT

ACCEPTED AND AGREED WITH RESPECT TO PARAGRAPH H ABOVE:

_/s/ Bob Israel_
BOB ISRAEL

8500478/7369E Rev. 11/05/85          -10-
George Gallo
BULLETPROOF HEARTS

The undersigned has read and is familiar with the foregoing Agreement, and represents and warrants to PPC that Lender is authorized to furnish Writer's services and to grant all rights, and make all representations and warranties as hereinabove set forth and the undersigned agrees to be bound by the terms and conditions of the foregoing Agreement insofar as it refers to the undersigned. In the event of a breach, or threatened breach, of the Agreement, PPC shall be entitled to seek legal and equitable relief by way of injunction or otherwise against the undersigned personally without the necessity of first resorting to or exhausting any rights or remedies which it may have against any other party. The undersigned shall look solely to Lender for compensation for such services and rights, and shall make no claim or demand upon PPC for any such compensation. The undersigned acknowledges that the foregoing representations, warranties and agreements are made by the undersigned as a material inducement to PPC to execute the foregoing Agreement, and, that in executing such Agreement, PPC will be relying thereon.

_____*George Gallo*_____
GEORGE GALLO

8500478/7369E Rev. 11/05/85           -11-
George Gallo
BULLETPROOF HEARTS